Good morning. May it please the court, Jonathan Libby appearing on behalf of the appellant Jesse Jr. Fowlkes. Your Honor, this case raises several challenges to special conditions of supervised release. Now, although they are special conditions, they have essentially become standard in this type of case. They're generally imposed in all cases in which there's been a charge of child pornography or other sex offender case. What is often forgotten with special conditions, however, is that they're not supposed to be one-size-fits-all. They are supposed to be narrowly tailored based on the particular circumstances of the defendant and the case. And the court is not supposed to impose a condition – well, the condition that's supposed to be imposed is the least restrictive condition based on the circumstances that would achieve the goals of supervised release. Now, I'd like to begin by focusing on Condition 4, which I think needs to be read in conjunction with Condition 5, which requires Mr. Fowlkes to undergo inpatient sex offender treatment and submit to physiological testing, including plethysmograph, polygraph testing, and that he waive his right of confidentiality in the mental health treatment records to allow the treatment programs to provide any information provided to the probation officer. Let me ask a question that I was puzzling a little bit about as to whether all of this is ripe or not, or do we wait until they try to impose these conditions on him? Well, I believe it is ripe. You raised it two times. Yeah, I believe it is ripe. Certainly, this Court has held that it is appropriate, fully appropriate, to raise on direct appeal the propriety of any special conditional supervised release. You know, obviously, we don't know what may happen, but I think the case law sufficiently shows that this is the appropriate form, that we shouldn't wait and put the defendant in a position of having to violate and then come back before the court. That that's simply not necessary. So I believe that this is sufficiently ripe at this time, and I think if we look at the Antelope decision, which came out earlier this year, that demonstrates part of the problem when this does not come up early in the process. In the Antelope case, he was repeatedly violated because he was trying to exercise his Fifth Amendment right not to answer questions. That might incriminate him as part of this sex offender treatment program. And I think Antelope has the control here. So let's assume that it does. Let's assume that Antelope is binding authority that extends to this kind of condition. So what's the rest of the problem with this? Well, I think the condition, if the condition were to remain, and first off, I believe that our position is that the condition should not remain that there were, in fact, a less restrictive condition that could have been imposed. Mr. Folks did not object to outpatient treatment, but did not believe that based on the record before the court that it was necessary to have him undergo inpatient treatment. Why not? What if inpatient is a long weekend at a retreat that says you need to spend some time away from your residence where you are going to be spending three days at a weekend consultation with other people similarly situated? What's wrong with that? Well, if, in fact, were just something like a weekend program, then there might not be a problem. Which goes back to Judge Fletcher's question. And that's right. That's right. I certainly see the point there. That's generally not how it would be. Two months or three months or six months, maybe it's a different question. Right. And under the condition, it leaves it completely up to the discretion of the probation officer. That's what they do, don't they? They do. Could he not object to it at that point? Well, you then have to go through the additional process of having to go back to court and having to do it. And that's where we have. How does that work? Let's suppose that the probation officer says next week, I've decided I like the recommendation of this treatment facility, and you're going to spend six months in a program that will cure you. Now, what's the mechanism that's open to Mr. Falks to then folks to challenge that before he winds up incarcerated, re-incarcerated in effect, although it's in a civil institution? Well, he'd probably argue with his probation officer a little bit. Then he would probably call me or his trial attorney and ask, what can we do about this? And we would file a petition in the district court and try to get a hearing before the district judge to try to persuade the district judge that this was not appropriate. I think the district judge might say, well, this is what I imposed before, so let's see what happens. He might or might not. Right. Six months is a pretty long time. It is a pretty long time. And which is why, and given the fact that we are giving so much discretion to the probation officer, I think we do need to recognize that the condition must be the least restrictive condition. Well, how is it least restrictive? You're saying basically you're positing, as I understand it, that the district court can't impose the potential for inpatient treatment under a least restrictive standard. I mean, depending on the facts and circumstances of the case. If, for example, the defendant before the court had a history of problems with outpatient treatment, was not able, completely, you know, continue to reoffend after going through various terms of outpatient treatment. I find it really hard to believe that in a sex offender situation where somebody has got a potential clinical problem, that to say that the condition of release can't include the option for some inpatient, which could be as few as three, two, one, one day. To say that that can't go in because it's not narrowly tailored, because he has to be a repeat offender of outpatient treatment. That's a pretty hard thing to. Well, I guess the point is that because it's supposed to be, the conditions are supposed to be the least restrictive. Well, the least restrictive would be nothing. I mean, so it's on a scale. I agree with what you're saying. But the least restrictive puts in and interposes some judgment. It doesn't say automatically it's not a direct order into civil commitment. So it's been scaled back. But there's, you know, in the system we've got with probation officers, that's the play in the system, it seems to me. True. But, of course, the probation officer can always go back before the court just as the defendant could and say that the condition that we have right now was not enough based on what's occurred so far. I see. You know, and that's what we're saying. The probation officer can always go back to the court. Let me ask this. Is there anything in this individual's record that suggests that he has had inappropriate contact with minors? None whatsoever, Your Honor. That's what I thought. No, the only thing in the record is the child pornography on his computer. Right. And then the sting, the purchase that he made through the government sting. And that was it. Certainly no evidence whatsoever. I included a picture of him together with his statement that he has an interest in 12- or 13-year-olds, and that upon occasion he masturbates looking at the stuff. There was an indication. Can't one fairly infer from that that a convicted felon should have treatment and be restrained from situations that might lead to temptation? Well, I believe you read his statements a little bit too broadly. He certainly did indicate that he gratifies himself through some of these pictures, not that he has a sexual interest in 12- or 13-year-olds. He said he had an interest in 12- or 13-year-olds. I grant you he didn't spell it out, but he said that was his interest. In terms of the pornography? Well, yeah, and presumably in terms of his self-gratification. Yes, but he's ---- And so why can't you say that it's reasonable to impose a condition that minimizes the risk that he might act on that in front of someone? Certainly. A condition can be imposed to deal with those issues. Absolutely. We're just saying they need to be the least restrictive conditions necessary. And now in terms of the condition itself, if the condition does remain, then we have to deal with whether or not the polygraph testing can remain as part of the condition. With respect to that, as I read Antelope, it says that an individual cannot be penalized for invoking his right, his Fifth Amendment rights in a polygraph context. Of course, that absolutely hasn't happened here. Correct. In order to make sure that it doesn't happen, why isn't the solution for this Court to say that condition should be construed, consistent with Antelope, that is, construed so that he has the right to, of course, exercise his Fifth Amendment right? This Court can. Yes. Why shouldn't we just do that? And perhaps that may be appropriate or to send it back for the district court to reassess the condition in light of Antelope. I mean, make clear that if you're going to impose polygraph testing, that the defendant is entitled to use and derivative use immunity under Castigar, that kind of thing. Sure. I mean, if this Court simply says this is how the condition must be construed, yeah, that certainly would be satisfactory. Do you think you'd get more relief than that from the district court if it reassessed in light of Antelope? Possibly. But, I mean, we never know what the district court may do when we get something back before it. Well, no, I wasn't being facetious. I just wondered if there was something more that could be done other than striking the poly altogether. Well, I think, I mean, when these conditions were presented to the district court, I mean, they were presented, obviously, as is often the case, in a recommendation letter from the probation officer. And when I talked about before how they're often treated as standard conditions, I think that's how the district court judges. Well, I'm sure it is. But I'm just, if we were to remand to the district court to reconsider in light of Antelope, I'm trying to figure out how, what it would do more than simply say, looking at Antelope, I feel that, obviously, I'm going to, in light of what the Ninth Circuit has said to me, I'm going to, I mean, I will make it specific that Antelope controls this condition. It's certainly possible the court could say, well, if he cannot be questioned about these certain things, if he has use and derivative of use immunity, then perhaps the condition is just not necessary. That I really wanted to have the polygraph testing to question him about any other activities that may have occurred. And if that's not the case, it may say it's just not worth it. Okay. I want to get back to this inpatient treatment. He doesn't have to offend to have the probation officer require it. Is that right? As I read it, it says he must take treatment. He must participate in treatment, and that may include. So it seems to me that that's a little difficult in the sense that we have a fellow who, nothing on the record that suggests that he's had inappropriate contact with children. Well, that's right. I mean, we don't believe that inpatient treatment would necessarily be the most appropriate thing for him, that it necessarily will aid in his rehabilitation in any way, shape, or form. In fact, one argument that could be made is that an inpatient treatment program would put him in contact with pedophiles. Well, the probation officer may share your view. This doesn't at all mean that that's going to happen. That's true, Your Honor. That's true. We're just trying to clear up the conditions the best we can at this point. Okay. Condition 5 requires that he waives his right of confidentiality. I'm not sure why the Court found that that was necessary. It's not clear why that would be necessary. It would. First, on the Lopez theory, that the probation officer may, his discretion may be benefited by knowing that this guy really doesn't have a problem. So he wouldn't be tempted to say go to inpatient treatment. And that certainly could, is possible. But the other hand, it could also mean that the probation officer is. It dissuades Mr. Foulkes from opening up to his counselor and gives all the information that could be, that could aid the counselor in his rehabilitation, that would be beneficial for the counselor to know. And if he's concerned that his probation officer is going to find out about this stuff, he may not want to give up this information. And that's not going to aid his rehabilitation. That's when we're reviewing under plain error at best, right? Well, I think Condition 5 actually can be read as being subsumed by the objection to Condition 4, because the objection was made to the sex offender treatment program. So I certainly can see the argument that the government has made, that it could be plain error. We think that it is subsumed by the prior objection. Now, Condition 6, we argue improperly delegates to the probation officer responsibility for determining whether the defendant should pay the cost of court order treatment, and if so, how much. This is an improper delegation to the probation officer. Under the statute, the statute makes clear that it's the court, not the probation officer, who is supposed to make these determinations. But here, just as in the restitution situation, in the Gunning case, this completely defers to the probation officer. The language is a little different. Why should we extend the rule because the probation office, after all, is the agent of the court? It is the agent of the court, but what is similar between the statutes is making clear that it is the court that is to make these findings and not the probation officer. That's the same in both statutes. There's no language in this one that precludes delegation. That's the real difference, it seems to me. Well, whenever the court finds that the funds are available for payment, the court may direct that reimbursement be required. I mean, it says the court shall make these findings. It's not merely a delegation to the probation officer to determine whether or not the defendant has the ability to pay after the court has directed him to pay. That was the situation in the Fifth Circuit case in the Warden decision, which the government talks about. In the Warden decision, the condition specifically said the defendant will incur the cost of such programs based on an ability to pay as determined by the probation officer. That's not what occurred here. Here, it in fact delegates the probation officer both determinations. And under Gunning, we would submit, just to be consistent, that's an improper delegation. With respect to Condition 7, this condition prohibits possession of any materials including pictures, photos, books, writings, drawings, videos, or video games that depicts and or describes sexually explicit conduct as defined in the relevant statute. Again, this condition is not narrowly tailored. It is inconsistent with the First Amendment. It sweeps much too much protected speech under its umbrella. And it need not be so broad in order to effectively address the sexual allegiance problem here. The condition here would prevent Mr. Folks from renting a movie that has a simulated sex scene. It has he can't read a romance novel. He can't videotape afternoon soap operas, because this condition broadly sweeps all of that conduct under its prohibition. And the government doesn't dispute this. This is inconsistent with Free Speech Coalition, which the Supreme Court struck down portions of the Child Pornography Prevention Act, saying that that swept much too much conduct under its umbrella. And what is Mr. Folks supposed to do here if he goes to a video store? Is he supposed to call his probation officer and say, I'm thinking about renting such and such movie. Is that okay? Because what happens then if he goes ahead and rents this movie, and we're talking about Oscar award-winning films, he gets home, he rents it, the probation officer pays him a visit and says, you're not allowed to have that film. That's not a narrowly tailored condition. And the court only evaluated in terms of the condition prohibited possession of illegal adult pornography and limited his ability to possess his own writings. I mean, that's the only argument that was presented to the court, and I think that's the only argument that the court considered. The court certainly didn't consider the argument presented here in terms of all of the protected speech, non-offensive protected speech that swept under this condition. Well, it said it was an overbreadth argument that they were considering. It was. I just don't believe that the court considered the full scope of the condition, and that's what we're talking about here. And I say I only have a little bit of time. Unless the Court has any further questions, I'll reserve the balance. Surely. Thanks. Rod Castro-Silva. Good morning, Your Honors. May it please the Court, Rod Castro-Silva for the United States. I think the first thing the Court should determine is whether or not the defendant has waived the conditions, has waived the claims that he has raised in this Court with respect to conditions, to all the conditions other than Condition 4. Conditions 5, 6, 7, 9, 10, and 11, those conditions were not objected to by the defendant, even though he had plenty of opportunity in the district court level to do so.  He objected to Condition 4, objected to certain facts in the PSR. He chose not to object to the other conditions in the district court level. And it's the government's position that this Court should consider those arguments waived, as opposed to merely forfeited. And as such, he does not get a bite of the apple here before this Court. Why not forfeited rather than waived? Because in this instance, the defendant was aware of his ability to do so. He was aware of it and, in fact, had done so. The defendant objected to Condition 4. He objected to certain issues that were raised in the PSR. He objected to the fine being imposed, for example, and was fully aware of his right to do so. He was fully aware of his ability to object to the conditions of supervised release. The conditions of supervised release were noticed to him. He was aware of them but chose not to and waived his ability to do so before this Court. That's the difference. Forfeiture is when the defendant may not be aware of his ability to do so or may not be aware of his right to do so or when there was no notice of a particular condition or a particular set of facts that were going to be imposed upon him. Here he was getting full notice and had complete awareness of his ability to do so. Nonetheless, if the Court does consider those claims, then it should analyze it under the plain error standard. And certainly the defendant has not met that standard with respect to all the conditions other than Condition 4. With respect to Condition 4, the Court has to view the Court's analysis under abusive discretion standard. And there, based on the defendant's offensive conviction, he is a sex offender. He ordered child pornography from a law enforcement officer. He admitted to being sexually aroused by children. He admitted writing stories about children engaging in rape and learning to enjoy it. He talked about admitting to masturbating with images of 12 to 13-year-old girls. Clearly, his own admissions, his own background, could lead the Court to reasonably believe that a sex offender treatment program was appropriate for this defendant. And at minimum, counseling with respect to that issue. What's your response to the postulate of the defendant, which is one starts from the premise that these should be narrowly tailored. There's still a lot of leeway, but they do need to be narrowly tailored. At least with the inpatient construct, the burden really has been put on the defendant to defend against having to be put into custody, in effect, by way of an inpatient circumstance, rather than leaving it up to the probation officer to come back for this first-time elder. Well, clearly not elderly. I can't say that. Middle-aged, Your Honor, middle-aged. Yeah, advanced middle-aged man, who is a first-time offender, no history of actual anything other than fantasizing. Why wouldn't the regime be appropriate in such a circumstance to limit it to outpatient treatment with the option of the probation officer coming back and saying, look, this course of treatment isn't working. We've got to enhance it to inpatient. Well, I think in a sense the condition allows for that to a certain extent. The condition does. It says that the defendant shall participate in counseling and or psychological psychiatric treatment and or sex-defender treatment program, which may include the inpatient. I understand it does. But it still says up front, the probation officer doesn't have to go, has no burden to come back to the court and say, he's got to spend some time in this clinical, as opposed to saying, he's gone through these outpatient courses and we've decided the medical professionals are saying, he needs something more, Your Honor. So that puts both the burden. The reason I'm saying this, it's probably easier for the probation officer to get in front of the district court promptly than it is for the defendant. Maybe not, but I don't know. I'm not sure if that is the case. But I think that the probation officers, that's their job. That's what they do day in and day out. They will meet with the defendant. The probation officers don't normally say, okay, this is what you're doing. I'm not meeting with you. They will meet with that person. They want to develop a relationship with the defendant. I said meet with the district court. No, no, I understand that. But what I'm saying is that the probation officer, their job is to decide what is best for the defendant during the period of supervised release. Sure. Based on his or her interviews with the defendant. I understand all that. I'm just saying in terms of starting out, instead of starting out broadly, start out more narrowly and then expand as necessary. Because this gives the probation officer the latitude to say from the get-go, based on a particular interview. I understand, but you're not saying why it's narrowly tailored. But the premise of my question, maybe I didn't make it clear, is you start out presumably narrowly. You're saying it's better to give it to the probation officer broadly and then let him narrowly tailor it in his discretion. But that's not the way the mandate is. It doesn't say it that way. It's a legal mandate. I'm not sure that's entirely accurate. The courts have indicated, this Court also has indicated, that conditions of supervised release can be broad. But they're supposed to be narrowly tailored. Reardon says that. Well, they should involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release. And those purposes include protection of the public, rehabilitation of the offender, and they should deter the defendant. You know, necessary for protection, but we have a case where the fellow has never apparently done anything that was inappropriate in contact with any children, his grandchildren or anybody else. So it seems narrowly tailoring has to be narrower than what's set forth here. Well, I would, with all due respect, quarrel with your conclusion that the defendant has not done anything wrong or inappropriate with children. I didn't say that. I simply said that in his contact with children, there's nothing in the record. Correct. There certainly is no evidence in the record that he inappropriately touched a child or molested a child. In fact, there's evidence that he had his own grandchildren with him and that the superintendent of the school or whoever, everybody said that his conduct was completely appropriate. With his own grandson. That is correct. But the defendant admitted that his sexual preference was with 12- to 13-year-old girls, that he had masturbated viewing those images that he had written. It was in the context of his looking at this pornography. I'm not saying that this is right or that he's a fine fellow. I'm just looking at what his record is. Correct. But, Your Honor, he didn't more than merely look at images. He affirmatively sought out those images. He affirmatively distributed those images. He affirmatively distributed those images, at least one image that he admitted to an individual by e-mail. So he was not merely the recipient of unexpectedly- Yes, I understand all that. But none of that leads to his having had inappropriate contact. That is correct. But that does not mean that the district court abused his discretion in imposing a condition that he participate in a sexual offender treatment program. There is no case that I have found that says only in those conditions, only when a defendant is convicted of molesting a child does this condition apply. The district court was certainly within its discretion to say, I believe that you have a sexual deviancy problem. I believe that you have a problem that you must resolve. It is inappropriate for you to be distributing child pornography. It is inappropriate for you to be masturbating in front of images of 12- to 13-year-old girls and writing about girls being raped and learning to enjoy it. And in order for you to rehabilitate yourself from that, you should participate in a sex offender treatment program. I don't disagree with any of that. But it seems to me that to say that the probation officer can put him into in-treatment, I am aware of what in-treatment is in the State of Washington. It's got kind of a sad history. I think that ultimately I believe that the district court, in its own discretion, and I think that the court needs to give, this court should give the district court wide latitude in that respect. The district court saw the defendant, was aware of what the defendant had done and all of the facts surrounding his conduct, and should defer to the district court's discretion with respect to what type of condition would best rehabilitate this defendant, would best protect the public, and meet the goals of supervised release. With respect to the polygraph condition, I don't think that at this stage there has been any violation of the Fifth Amendment. I don't think that Antelope controls in the sense that a per se, a polygraph condition is per se invalid under the Fifth Amendment. It's pretty clear that it says you can't put the parolee, the releasee, under some risk of having to disclose prior crime. Absolutely. And if that's his reason for not going through a polygraph, Antelope clearly controls that. So what's your objection to Judge Reimer's suggestion that we simply construe it as having, as being constrained? No, Judge, I think that that is the law. The law is that under this condition, the defendant should be permitted to invoke his valid Fifth Amendment claim, and if he has a valid Fifth Amendment claim, he should not be punished for invoking it. There certainly is no, the government has no objection to that construction of that condition. With respect to condition number five, the defendant for the first time argues that, despite the fact that in his papers he conceded that it was a plain error analysis, for the first time now argues that it should be subsumed into condition number four somehow, and therefore a different standard should apply. Condition number five is independent, is an independent condition. It stands on its own. Certainly it does not function without a sex-offended treatment program, but nonetheless it is a separate condition. And Lopez should control the situation, and if the court, this court is going to consider the other conditions, it certainly was not a plain error by the district court to impose this. It had Ninth Circuit authority on which it could rely, and the Ninth Circuit has said that these types of conditions are valid. And again, it would not affect the defendant's substantial rights, because if he ultimately believes that there's some facet of that that is inappropriate and valid, he can certainly petition the district court for a modification of that condition. With respect to condition number six, that the defendant pay all costs, either all or some of the costs associated with this treatment, gunning is distinguishable. It applies to a specific statute, the NBRA, which has specific language that 3672 does not have. Additionally, factually, the district court had evidence before it that the defendant could make payments for this treatment. In both the PSR, the probation officer indicated the defendant had the ability to make payments every month for purposes of a fine, and in the addendum indicated that the defendant can make $150 payments per month for a fine. A fine was not imposed by the district court, but nonetheless the court had that evidence before it or that information before it to indicate that the defendant had a stream of income that would make payments available for treatment. So factually and legally, condition number six is appropriate and certainly not a plain error by the district court. Condition number seven is controlled by both Bee and Reardon. In both of those cases, the specific language of sexually explicit conduct, in other words, materials depicting that type of conduct, as defined in section 2256-2, a condition imposing that is valid and appropriate and not violative of the First Amendment. Conditions nine and 11, which deal with loitering within 100 feet of schools and parks and other places frequented by children, as well as living within direct view of those types of places. Likewise, are not plainly wrong. This court in Bee found that the 100-foot condition was a proper exercise of the district court's discretion. And in Gugliardo, this court also expanded Bee to allow for a condition limiting where a defendant could reside. Now, in that case, granted the court remanded for the district court to define what close proximity meant, but it did not strike the condition, the residency restriction, and declared it invalid. Also, Reardon had a loitering condition that was approved. So those conditions have been approved by this court in the past and certainly were not clearly erroneous when the district court imposed them. And finally, condition number 10, which precludes the defendant from associating with minors without the presence of a legal guardian or parent and without first giving notice of his prior offense, was also not clearly erroneous. The defendant's offense of conviction, his background, clearly indicated to the court that the defendant should be monitored when around children. And that is all that the condition does. Unless the court has further questions, I will submit on the papers. Okay, thank you. Thank you, Your Honor. Thank you, Your Honor. On the waiver issue, these claims were not waived. There is a difference between waiver and forfeiture. Waiver is an intentional relinquishment or abandonment of a known right. There's certainly no evidence in the record that Mr. Folks intentionally relinquished his right to appeal these conditions. And there's numerous cases that certainly say that plain error review applies, even when you've not raised challenge to these types of conditions. The government cites a number of cases. I think if you follow them back, they all rely on some old case law that predated Olano and Perez and simply don't apply in this circumstance. With respect to Condition 6, the government makes the argument that the defendant, that probation found that the defendant had the ability to make a payment for a fine and that that's somehow relevant. I just note the court rejected the probation officer's recommendation of a fine. Probation had, in fact, recommended that he pay $300 a month towards a fine. Then when the defense objected, they cut it down to $150. And the court said that's ridiculous, since Mr. Folks lives entirely on his Social Security income of $1,100 a month, and that he clearly does not have the ability to pay a fine. So I'm a little confused that the government would suggest that he has the ability to pay anything, given that he only has $1,100. And I see my time has expired. I thank the court. Thank you, Mr. Levy. The counsel on the matter just argued that it will be submitted, and the court will stand.
judges: B. Fletcher, Rymer, Fisher